**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO.: 0:12-cv-62086-WJZ**

**ADAM MIRABELLA**, on behalf of himself
and all others similarly situated,

       Plaintiffs,

**vs.**

**VITAL PHARMACEUTICALS, INC.**, a
Florida corporation, doing business as VPX.

       Defendant.

_____

## PLAINTIFF'S MOTION TO CERTIFY CLASS AND INCORPORATED MEMORANDUM OF LAW

       Plaintiff, ADAM MIRABELLA ("Plaintiff"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.1, hereby moves to certify a class of similarly situated nationwide consumers who purchased REDLINE Xtreme® Energy Drink (the "Product") during the Class period, from Defendant VITAL PHARMACEUTICALS, INC, a Florida corporation, doing business as VPX ("VPX" or "Defendant"), and hereby reserves his right to amend and/or supplement this Motion as further investigation and discovery occurs, and states as follows in support thereof:

       1.     The plaintiff class satisfies all of the statutory prerequisites for class certification, as detailed in the Memorandum of Law, attached hereto and fully incorporated herein.

       2.     Joinder of all class members is not practical, as the class consists of at least thousands of persons who reside throughout the United States, the precise scope of which will be ascertained through discovery.

       3.     There are questions of fact and law common to all class members, which predominate over any issues affecting only individual class members.

4.      All class claims arise from the same acts, policies, and practices of Defendant and all are based on the same typical factual and legal theories.

5.      Plaintiff will fairly and adequately represent and protect the interests of the class and has no interests antagonistic to those of the class.

6.      All class members have the same legal right to fair treatment by Defendant. Plaintiff, by proving his claims, will prove the claims of the class.

7.      Plaintiff has retained competent counsel, experienced in the prosecution and successful settlement of class actions.

8.      Counsel has prosecuted and will continue to prosecute this action vigorously in the interests of Plaintiff and the class.

9.      A class action is an appropriate method for the fair and efficient adjudication of the controversy. Absent this case proceeding as a class action, Plaintiff and class members will effectively be left without a remedy.

10.     Pursuant to Local Rule 23.1(c), Plaintiff requests that the parties be permitted to supplement the record with additional evidence and testimony with regard to class certification, to the extent necessary, through upon the conclusion of discovery. The parties are mediating this matter on May 6, 2014 [DE 37], and the parties have voluntarily agreed to brief class certification issues in advance of mediation and prior to the conclusion of discovery to aid in the facilitation of meaningful mediation discussions.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order:  (1) appointing Plaintiff, ADAM MIRABELLA, as representative for members of the class; (2) appointing the undersigned attorneys as Lead Class Counsel; (3) certifying the following Rule 23(b)(2) and/or Rule 23(b)(3) class: "All United States persons who have purchased the Product, REDLINE Xtreme® Energy Drink during the period extending from October 2008, up to the date notice is provided to the Class. Excluded from the Class are Defendant's officers, directors, employees, and those who purchased the Product for the purpose of resale, and any judicial officer assigned to this matter and his or her immediate family;" and (4) for all other relief this Honorable Court deems just, appropriate, or proper.

Respectfully Submitted,

**DATED:** April 18, 2014**.**            By:      */s/    Joshua H. Eggnatz*
                                                   Joshua H. Eggnatz, Esq.

Fla. Bar. No.: 0067926
**THE EGGNATZ LAW FIRM, P.A.**
1920 N. Commerce Parkway
Suite 1
Weston, FL 33326
Tel:    (954) 634-4355
Fax:    (954) 634-4342
JEggnatz@EggnatzLaw.com

Benjamin M. Lopatin, Esq.
Cal. Bar No.: 281730
(Admitted *Pro Hac Vice*)
**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Office:  (800) 436-6437
Fax:  (415) 692-6607 (fax)
Email:  lopatin@hwrlawoffice.com

*Trial Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been able to resolve the issues.

Dated:  April 18, 2014                    */s/  Joshua H. Eggnatz*
                                          Joshua H. Eggnatz

## CERTIFICATE OF SERVICE

I hereby certify that on <u>April 18, 2014</u>, a copy of the foregoing was filed with the Clerk of Court via CM/ECF.  I further certify that on this date the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF upon all counsel of record identified below:

                                          */s/ Joshua H. Eggnatz*
                                          Joshua H. Eggnatz, Esq.

Steven Y. Leinicke, Esq.
syleinicke@wickersmith.com
Florida Bar No. 174483
Jordan S. Cohen, Esq.
jcohen@wickersmith.com
Florida Bar No. 551872
James D. Murdock, II
jmurdock@wickersmith.com
Florida Bar No. 16806
**WICKER, SMITH, O'HARA, MCCOY & FORD, P.A.**
Attorneys for Vital Pharmaceuticals, Inc.
515 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33302
Phone: (954) 847-4800
Fax: (954) 760-9353

Scott D. Knapp, Esq.
Florida Bar No. 16688
sknapp@broadandcassel.com
**BROAD AND CASSEL**
Attorney for Defendant
One Financial Plaza
100 S.E. 3rd Avenue
Suite 2700
Fort Lauderdale, FL 33394
Phone: (954) 764-7060
Fax: (954) 761-8135

Plaintiff, ADAM MIRABELLA, ("Plaintiff") by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion for Class Certification.

## I.   INTRODUCTION

This lawsuit is ideally suited for class certification of Plaintiff's claims for violation of Florida's Deceptive and Unfair Trade Practices Act, *Florida Statutes* sections 501.201, *et seq.* ("FDUTPA") (Count I), breach of the implied warranty of merchantability (Count IV), and for violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*) ("MMWA") (Count V) based on Defendant's manufacturing, labeling, marketing, advertising, sale and distribution of the REDLINE Xtreme® Energy Drink (the "Product") to nationwide purchasers[1].

The Product is intended to safely and effectively provide energy, improve reaction time, and increase mental focus; however, it does not provide the advertised benefits, and instead can cause adverse health effects. The Product does not work as impliedly warranted and does not adequately inform consumers of the true strength and nature of the Product. Despite being sold and marketed as an "energy drink," the Product is misbranded as a "dietary supplement." The Product fails to comply with FDA guidance for the labeling of energy drinks. These central issues in this case predominate over any other issue. The issue presented here is not whether Defendant's practices are in fact deceptive, but whether Plaintiff's case is capable of being maintained on a class-wide basis.

## II.   STATEMENT OF COMMON FACTS UNDERLYING PLAINTIFF'S CLAIMS

### A.   Plaintiff's Allegations.

Defendant manufactures, labels, markets, advertises, sells and distributes the Product to purchasers throughout the United States ("U.S."). The Product is sold pursuant to deceptive and unfair trade practices, and is not fit for its intended purpose. Am. Compl. ¶ 1 [DE 9].[2] The

---

1.    Plaintiff's Amended Complaint identifies several of Defendant's products within the "Redline" product line. However, this Motion is limited to certification of the REDLINE Xtreme® Energy Drink.

2.    Plaintiff's Motion for Leave to File Second Amended Complaint [DE 36], filed February 14, 2014, and not responded to by Defendant, is yet to be ruled on by the Court. Plaintiff's Proposed Second Amended Complaint [DE 36-1] contains additional allegations to conform to the evidence learned throughout discovery. However, because said Motion for Leave [DE 36] is pending at the time this Motion for Class Certification is being filed, Plaintiff is citing to

Case 0:12-cv-62086-WJZ   Document 49   Entered on FLSD Docket 04/18/2014   Page 6 of 22


Product is intended to safely and effectively provide energy, improve reaction time, and increase mental focus, but instead causes adverse health effects. *Id.* at ¶ 2-3. The Product contains a combination of ingredients that are notable for adverse effects and that go well beyond the Product's goal of energy enhancement. *Id.* at ¶ 18. The Product is inadequately labeled and misbranded. *Id.* at ¶ 19. Defendant has failed to act to adequately warn consumers of the unfitness and true nature of the Product, or modify the Product's label. *Id.* at ¶ 4, 22.

Plaintiff and Class members purchased the Product based on Defendant's representations that it would safely and effectively provide the claimed benefits so long as the consumer used the Product as directed. Am. Compl. ¶ 24. Plaintiff and Class members have suffered economic damages as a result of purchasing the Product, in that they spent money on a Product that didn't work as advertised—and therefore lacked the value they had been led to believe the Product had. *Id.* at ¶ 25. Plaintiff and Class members are entitled to damages, and Defendant should also be ordered to cease its deceptive and unfair advertising. *Id.* at ¶ 52-53.

**B. Factual Record To-Date Supporting Plaintiff's Allegations.**

**a. Defendant's Answers to Written Discovery.**

"Defendant admits that Redline Xtreme was sold as an energy drink." *See* Def.'s Resp. to Req. for Admis., at 5-7, 10, attached hereto as **Exhibit "A**." Defendant advertises and sells the Product online throughout the U.S., with the label as it existed at the time of Plaintiff's purchase. *Id.* at 1, 2, 4, 33-34, 52. Consumers purchase the Product both directly from Defendant, as well as from retailers. *Id.* at 14, 16. Defendant has received reports from consumers claiming to have suffered harm as a result of using the Product. *Id.* at 12.

"There were no substantive modifications regarding the ingredients, warning and/or instructions on the Redline Extreme label during the class period." *See* Def.'s Supp. Answers to Interrogs., at 9, attached hereto as **Exhibit "B."** Defendant has produced documents which purport to evidence the sale and distribution of the Product, including the number of units sold by year, the retailers and distributors, and sales figures. *See* Def.'s Am. Supp. Resp. to Req. for Produc., at 1-2, 19, 20, 32, 57, attached hereto as **Exhibit "C."** Defendant has promulgated suggested wholesale and retail price lists, and retail cost information for direct purchases are on Defendant's website. *Id.* at 36, 37, 56. Defendant has produced documents which purport to

---

Plaintiff's Amended Complaint [DE 9] throughout this Motion.

evidence all consumer complaints, adverse events, and communications with the Food and Drug Administration ("FDA") regarding the Product. *Id*. at 15, 54.

          **b.**  **Plaintiff's Answers to Written Discovery.**

Plaintiff purchased the Product during the Class Period. *See* Pl.'s Am. Answers to Interrogs., at 2, attached hereto as **Exhibit "D."** Plaintiff purchased the Product to safely and effectively receive increased energy, improvement in reaction time, and increased mental focus. *Id*.  Plaintiff read and relied upon the Product's label before purchasing it. *Id*.

The Product does not provide the advertised benefits and does work as warranted. *Id*. at 3. It fails to adequately warn consumers of the unfitness of the Product, the potential for hospitalization, the true strength, and precautions to take to avoid negative effects, and is in tiny uneven font. Exhibit D, at 3. The Product deceptively misrepresents its statistical "university proven" benefits. *Id*. Had Plaintiff known the Product was not fit he would not have purchased it. *Id*. at 14.

Plaintiff has produced a list of adverse events reported to the FDA, as well as other various online articles discussing adverse effects related to the Product. *See* documents produced in connection with Pl.'s Resp. to Req. for Produc., at BS 11-12, 26, 77-94, attached hereto as **Exhibit "E."**  Plaintiff has produced pictures of the Product. *Id*. at 56-58, 64, 67-68.

          **c.**  **Defendant's Deposition Testimony.**

Defendant's corporate representative on the subject matter of sales and distribution, Mr. Eugene Bukovi, testified that the distribution process, including the bottling, begins at Defendant's facility and corporate offices in Weston, Florida. Bukovi Dep. 7:19-23, 38:12-20, April 4, 2014, attached hereto as **Exhibit "F."** Defendant keeps record of the number of units sold, and the retail stores and distributors that it sells to. *Id*. 9:20-23, 10:3-21. Defendant's distributors tell Defendant up-front which States they are distributing to. *Id*. 13:21-25.

Defendant also has a website with an online store that sells the Product as an "energy drink" directly to consumers. *Id*. 15:4-15, 16:1-6, 18:9-14; *See also* Exhibits to Bukovi Dep., attached hereto as **Exhibit "G**." The website is uniform throughout the U.S. *Id*. The website makes the same "university proven" statements as the Product's label. *See* Exhibit F, at 9:9-21. Other than the flavoring, and regardless if purchased online or from the store, they're all the same Product and all come in the same sealed container. *Id*. at 19-20, 21:18-21, 35:17-25–36:1-

9. Defendant keeps record of identifying consumer information from its website purchases. *Id*. 34-35; *See also* Exhibit G.

When sold at retail stores, Defendant requests that the Product be placed in ideal locations, which is chest-to-eye height and not on the hinge side of a cooler door. *Id*. at 29:23-25–30:1-6. It wants the Product sold from a cooler to increase its sales. *Id*. at 30:19-25–31:2-6. It makes suggestions on where to place the Product in the store, and does not restrict where the Product can be placed in the store. *Id*. at 31:9-15. The retailer is not given any instruction to restrict the sale to minors. Exhibit F, at 32:22-25.

Defendant charges consumers $3.69 per unit of the Product. *Id*. at 33:8-23. Defendant is able to filter and tally its sales figures by year, location, and state. *Id*. 43:1-12. It sold approximately ███████ cases of the Product throughout the Class Period; there is 24 bottles in each case. *Id*. 48:19-25–49:1-13.

Defendant's corporate representative on the subject matter of consumer complaints and adverse reaction reports, Mr. Jonathan Owoc, testified that energy manufacturers should provide a proper warning and instructions on how to properly use the Product. Owoc Dep. 18:10-25–19:1, April 4, 2014, attached hereto as **Exhibit "H."** All of Defendant's documents related to consumer complaints and adverse events were produced. *See Id*. at 27:22-25–29:1-7. Defendant has a responsibility to document, report, follow-up on and investigate, and preserve all source documents related to all adverse events for six years. *Id*. at 21-23. Despite this responsibility, Defendant only instructs consumers to report "serious" adverse events to Defendant. *Id*. 24:10-25–25:1-3. The label does not warn consumers to not take the Product on an empty stomach or immediately before working out, and it is specifically marketed to increase performance. *Id*. at 43:3-25–45:1-9, 24-25, 46:9-10. Other than documenting and reporting adverse events to the FDA, he was unaware of any instance where Defendant conducted further investigation into an adverse event related to the Product. *Id*. at 27:10-21, 73:9-25–74:1-8.

Defendant does not keep track of, and otherwise spoliates all consumer e-mails after one year pursuant to its "records retention policy." *Id*. 29:10-25. He had no explanation as to why Plaintiff's own e-mail reporting Plaintiff's adverse event was not preserved in its records. *Id*. 77:17-23. Defendant does not maintain an on-going daily call log for customer complaints. *Id*. 67:22-25–68:1-10, 71:17-25–72:1-14. Despite receiving a plethora of consumer complaints

related to the Product, Mr. Owoc was unaware if Defendant has ever found anything wrong with the Product. *See generally* Exhibit H, and Exhibit H, at 36:25–37:1-4, 79:6-10.

He confirmed that a consumer previously complained about the Products inadequate labeling because information was "squiggly" and "tiny," and the "the product was not well advertised about its true nature." *Id.* at 52:23-24–52. The consumer scolded Defendant "for not properly advertising the dangers," engaging in "an unacceptable marketing practice." *Id.*

### d. **Plaintiff's Deposition Testimony.**

Plaintiff traveled from Texas to Florida for his deposition. Mirabella Dep. 12:10-25–13:1, Feb. 26 4, 2014, attached hereto as **Exhibit "I."** He filed the lawsuit because he thinks the label and Product presentation should be changed. *Id.* at 20:2-12. The label is in tiny, uneven, hard to read font, and is misleading because it's presented as an energy drink. *Id.* 20:22-25–21:1-3, 43:15-18, 50:21-23. The "university proven" and "electrolytes" statements are also misleading. *Id.* 21:6-11, 42:22-25, 88:2-21. He is trying to recover reimbursement of the purchase price for himself and others who purchased the Product, even those who did not suffer physical harm. *Id.* 21:25–22:1-3, 73:1-25, 74:16-23. He also wants a label change so consumers are better informed about the Product. *Id.* 22:9-11, 72:10-15, 98:3-15. Plaintiff assisted in the preparation of his discovery. *Id.* 34:1-25–35:35:1-8. He understands his role as Class Representative. *Id.* at 74:4-23.

### e. **Plaintiff's Expert.**

Plaintiff's expert's report is attached hereto as **Exhibit "J**." A brief summary of Dr. Sheri Zidenberg-Cherr, Ph.D's opinion is as follows:

1.      The Product is misbranded.  The font size is smaller than allowed by the FDA.

2.      Although Defendant markets and advertises the Product as a drink/beverage, it improperly labels it a "dietary supplement." Because the Product does not follow labeling regulations for conventional foods, it is misbranded and misleading to the consumer. It evades labeling and ingredient requirements for beverages by labeling it a "dietary supplement."

3.      The Product is claimed to be supported by university proven benefits with statistical evidence. Defendant's statements are not supported by competent and reliable scientific evidence.

4.      The Product is unfit due to the level and interaction of its ingredients. The label does not inform consumers of the true nature, properties, and strength of the Product. Although each serving of Product claims to have 158 mg of caffeine anhydrous, and to be only the strength

of "less than 2 cups of coffee," caffeine anhydrous is more effective than caffeine in coffee, and there are other stimulants in the Product that contain caffeine, have similar stimulatory effects, and boost the effects of caffeine. It misleadingly suggests that it is no stronger than 2 cups of coffee or any other energy drink. The actual caffeine content and strength exceeds that listed on the label.

5.     Risks of adverse effects are higher when combined with other stimulants and physical activity, so the label should caution consumers when using the Product immediately before strenuous activity. The label should instruct consumers to not take the Product on an empty stomach, and to use caution when taking the Product before strenuous exercise.

### III.   LEGAL STANDARD

### A.   The Proposed Class

Plaintiff seeks certification of the following nationwide Class:

> All United States Citizens who have purchased the REDLINE Xtreme® Energy Drink, during the period extending from October 2008, up to the date notice is provided to the class. Excluded from the class are Defendant's officers, directors, employees, and those who purchased the Product for the purpose of resale, and any judicial officer assigned to this matter and his or her immediate family.

Plaintiff, Adam Mirabella, is the proposed Class representative.

### B.   Federal Rule of Civil Procedure 23

A "district court has broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992); *see also Heaven*, 118 F.3d at 737 ("The district court's decision whether to certify a class may only be overturned if it constitutes an abuse of discretion."). Plaintiff seeks class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> (a) **Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative party/parties will fairly and adequately protect the interests of the class.

(b) **Types of Class Actions**. A class action may be maintained if Rule 23(a) is satisfied and if:

. . .

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(a)–(b).

A plaintiff can maintain its case as a class action "if all four prerequisites of Rule 23(a) are satisfied, and, in addition, the requirements of one of the three subsections of Rule 23(b) are also met." *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997); *see also Fitzpatrick v. General Mills, Inc.*, 635 F. 3d 1279, 1282 (11th Cir. 2011) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)).   In determining whether to maintain an action as a class action, courts do not conduct an exploration of the merits regarding aspects of the claims unrelated to a Rule 23 requirement. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177-78 (1974); *In re Initial Public Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Nonetheless, a court "may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006).

## C.   <u>Florida's Deceptive and Unfair Trade Practices Act is a Certifiable Cause of Action</u>

FDUTPA is "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); FLA. STAT. § 501.202. In the interests of consumer protection, FDUTPA should be "liberally construed." *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001).   Unlike common law fraud, a "deceptive practice" under FDUTPA is one that is only likely to mislead consumers. *Davis v. Powertel, Inc.,* 776 So. 2d 971, 974 (Fla. 1st DCA 2000).   "[T]he question is not

whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance." *Id.*; *see also Urquhart v. Manatee Mem'l Hosp.,* No. 8:06-cv-1418, 2007 U.S. Dist. LEXIS 17531 (M.D. Fla. Mar. 13, 2007).

"The Supreme Court of Florida has not set forth the elements of a FDUTPA claim." *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010). Rather, FDUTPA provides that Florida courts must give "due consideration and great weight" to Federal Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). FLA. STAT. § 501.204(2); *Id.* Federal court opinions provide that "a deceptive practice is one that is 'likely to mislead' consumers." *Id.* (citing *In re Int'l Harvester Co.*, 104 F.T.C. 949 (1984); *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984). "According to Judge Padavano, however, 'this standard does not require subjective evidence of reliance, as would be the case with a common law action for fraud.'" *Nelson*, 270 F.R.D. at 692 (citing *Davis*, 776 So. 2d at 973–74) (emphasis added) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue").

Here, Defendant's unfair and deceptive practices are likely to mislead Plaintiff and members of the class. Plaintiff and members of the class have been aggrieved in that they purchased a misbranded and misleading product. Therefore, "should the class prevail on the liability issue, each putative class member would only need to show that he or she paid a premium for [the Product] to be entitled to damages under the FDUTPA." *See Fitzpatrick*, 635 F.3d at 1282. FDUTPA's stated goals will not be advanced absent this case being maintained as a class action.

Similarly, with regard to Plaintiff's claims for breach of the implied covenant of merchantability and violation of the MMWA, it can be established through common proof that (1) a defect existed in the product; (2) the defect caused the injury; and (3) the defect in the product existed at the time the product left the possession of the manufacturer. *See Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1223-24 (M.D. Fla. 2009). In order for a product to be merchantable and not defective, it must at least: (a) pass without objection in the trade under the contract description . . .; (c) [be] fit for the ordinary purposes for which such goods are used . . .; (e) [be] adequately contained, packaged, and labeled as the agreement may

require; and (f) conform to the promises or affirmations of fact made on the container or label if any. *See* Fla. Stat. § 672.314.

## IV.   CLASS CERTIFICATION IS APPROPRIATE

Class certification is appropriate because all of the elements of Rules 23(a), 23(b)(2) and 23(b)(3) have been met.  Defendant has made deceptive and unfair claims, in that it intended to and did deceive Plaintiff and the general public, into believing that the Product is an "energy drink" that safely and effectively provides an energy rush, improves reaction time, and increases mental focus. Defendant made these representations under misleading and unfair circumstances, which are not supported by competent and reliable scientific evidence. Moreover, the Product is misbranded in that fails to comply with FDA labeling requirements and because Defendant improperly misbrands the Product a "dietary supplement" to avoid the labeling and ingredient disclosure requirements for conventional foods. The Product does not work as advertised and misleads the consumer about the true strength and nature of the Product.  Plaintiff's claims are capable of uniform proof class-wide. Therefore, class certification is appropriate.

## A.   Certification is Appropriate Pursuant to Rule 23(a)

Consumer protection claims, including the claims at issue here, are ideal for class certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); accord *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 581 (M.D. Fla. 2006) (certifying FDUTPA claim, finding that "[p]laintiff alleges that [d]efendant committed the same or very similar unlawful acts utilizing the same methodology against the entire class").

### (1)   Numerosity is Satisfied

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *10 (S.D. Fla. June 15, 2010); "The numerosity inquiry is not focused solely on the number of proposed class members, but instead 'whether joinder of proposed class members is impractical.'" *Id.* (quoting *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)).  It is not necessary to know the exact number of class members, but the moving party "must make reasonable estimates with support as to the size of the proposed class." *Id.* (quoting *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000)).  "Generally, less than twenty-one is inadequate, more than forty is adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D 484,

490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Numerosity is indisputable and Defendant cannot contend otherwise. As evidenced above, Defendant has sold approximately ██████[3] units of the Product throughout the Class Period. Based on the sheer volume of sales there is at least in the many thousands, if not millions of Class members, thereby making the class so numerous that joinder is impracticable. *See LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing *Bacon v. Honda of Amer. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)). As a result, numerosity is satisfied.

(2)   Commonality is Satisfied

The commonality requirement of Rule 23(a)(2) demands "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where questions of law refer to standardized conduct by a defendant towards members of the proposed class. *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991). "The primary concern in the consideration of commonality is whether the representative's claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory. *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91,107 (Fla. 2011) (citing *Morgan v. Coats*, 33 So. 3d 59, 64 (Fla. 2d DCA 2010)). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551. Commonality is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). Additionally, FDUTPA requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). The threshold for commonality is "not high". *Jacobs v. Osmose, Inc.*, 213 F.R.D. 607, 612 (S.D. Fla 2003) (citing *Jenkins v. Raymark Industries, Inc.*, 782 F.2d. 468, 472 (5th Cir. 1986), reh'g denied 785 F.2d 1034 (5th Cir. 1986). "The requirement is satisfied when questions of law and fact linking the class members are substantially related to the resolution of the litigation, even though the individuals

---

3.   Approximately ██████ cases multiplied by 24 units per case. Plaintiff has already served supplement discovery to learn the precise volume of sales, and to the extent Defendant contests numerosity, Plaintiff intends to supplement this Memorandum with detailed sales information upon the conclusion of discovery.

are not identically situated. *Jacobs*, 213 F.R.D. at 612. (citing *Sanders v. Robinson Humphrey/American Express, Inc.*, 634 F. Supp.1048, 1055 (N.D. Ga. 1986).

Here, there is at least one common issue of law or fact whose resolution is capable of being proven class-wide and that will affect all or a significant number of the putative class members. *See Moore, et al. v. GNC Holdings, Inc.*, Case No.: 12-61703-CIV-DIMITROULEAS/SNOW, Order Granting Plaintiff's Motion for Class Certification [DE 61], * 6 (S.D. Fla. Oct. 17, 20130). In fact, several issues of law or fact that are common to the Proposed Class exist.[4] These issues are central to Defendant's liability, and resolution of these issues will affect all members of the putative class. *See, Nelson*, 270 F.R.D. at 694. Thus, Plaintiff has satisfied the commonality requirement.

(3)   Typicality is Satisfied

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  The typicality requirement, like commonality, is not demanding.  *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Piazza v. Ebsco Inds., Inc.,* 273 F.3d 1341, 1351 (11th Cir. 2001). The typicality element is satisfied when the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class.  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985); *see also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992).  The "commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also Griffin v.*

---

4.      Common issues include: (1) Whether Defendant's practices and representations related to the marketing, labeling and sales of the Product were unfair, deceptive and/or unlawful in any respect, thereby violating Florida Deceptive and Unfair Trade Practices Act, *inter alia*, sections 501.201 to 501.213, *Florida Statutes*; (2) Whether the statements on the Product's label and advertising is material to a reasonable consumer; (3) Whether Defendant misrepresented the adverse effects; (4) Whether marketing and advertising the Product as an "energy drink" causes the Product to be misbranded or misleading; (5) Whether the labeling causes the Product to be misbranded; (6) Whether Defendant's claims about the Product's efficacy is supported by competent and reliable scientific evidence; (7) Whether a reasonable consumer would have been misled about the Product's true nature and strength of the Product; (8) Whether Defendant's conduct economically injured consumers, and if so, the extent of the injury and proper measure of relief; (9) Whether Defendant should be made to engage in a corrective advertising campaign; and (10) Whether Defendant should be required to modify its labeling of the Product.

*Dugger*, 823 F.2d 1476, 1489 n.31 (11th Cir. 1987). Moreover, "[d]ifferences in the amount of damages between the class representative and other class members does not affect typicality." *Kornberg*, 741 F.2d at 1337.

Here, Plaintiff and other Class members' claims are based on the same alleged unfair, deceptive, and misbranded Product. Whether purchased online or from a retailer, all Products make same misleading and unfair representations. Because "Plaintiff's FDUTPA claims arise from the purchase of the same Product purchased by the putative class members, and "focus on the same (mis)representations," typicality is satisfied. *Moore*, 12-61703, *7.

(4)   Adequacy is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement applies to both the named plaintiffs and their counsel." *Smith*, 2010 LEXIS 67832, at *12 (citing *London v. Wal-Mart, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). Generally, in class actions, "[a]dequacy of representation is presumed." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003).

Here, Plaintiff and "[his] counsel satisfy this requirement." *Moore*, 12-61703, *8. Plaintiff has been involved and is participating in this litigation. He flew from Texas to sit for his deposition and assisted in the preparation of his discovery responses. He is seeking the same relief for himself and all Class members. He understands his role of Class Representative. Each Class members' claims arise under the same legal theories as the representative Plaintiff. There is nothing to suggest that Plaintiff has any interest antagonistic to the vigorous pursuit of the Classes' claims against Defendant.

In addition, Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Class Counsel's respective firm resumes highlighting some of their relevant experience is attached hereto as **Exhibit "K."** Accordingly, the requirements of Rule 23(a) have been satisfied

**B.    Certification is Appropriate Pursuant to Rule 23(b)(2)**

This action qualifies as a class action under Rule 23(b)(2) because, as described above, Defendant's deceptive marketing and labeling of the Product is an action of general applicability to all members of the Class "so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[e]s as a whole." Fed. R. Civ. P. 23(b)(2). In addition to damages,

Plaintiff is seeking injunctive relief to prevent further deceptive conduct. Pursuant to FDUTPA, Fla. Stat. § 501.211, "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated."

Regardless if the Product was purchased online or from a retail store, Defendant's conduct applies uniformly to the proposed Class. Defendant's representations that the Product is an "energy drink," has statistically verifiable efficacy of increased energy, reaction time, and mental focus, and is merely the strength of less than two cups of coffee, as well as the misbranding of the Product's label, applies to all members of the Class, rending final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Thus satisfying the Rule 23(b)(2) requirement.

**C.      Certification is Appropriate Pursuant to Rule 23(b)(3)**

A class action may be certified under Rule 23(b)(3) "if the Court finds that the questions or law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fitzpatrick*, 635 F.3d at 1282 (quoting FED. R. CIV. P. 23(b)(3)). Common issues predominate if they have a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individual issues in resolving the claim or claims of each class member." *Vega,* 564 F.3d at 1270 (11th Cir. 2009); *See also Klay*, 382 F.3d at 1255.

Notably, Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).  Under this factor, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254. Plaintiff can prove the essential issues in this case with common proof, thus class-wide issues predominate over individualized issues.

(1)      <u>Predominance is Satisfied</u>

FDUTPA's purpose is to "(1) simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive and unfair trade practices; (2) to protect the consuming public and legitimate business enterprises from

those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce; and (3) to make consumer protection and enforcement consistent with established practices of federal law relating to consumer protection." *Millennium Commc'n & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla.,* 761 So.2d 1256, 1261 (Fla. 3d DCA 2000) (citing *Fla. Stat. §§501.202*).

"FDUTPA does have applicability to the commercial transactions between Florida corporations and non-resident consumers." *Millennium,* 761 So.2d at 1260-61. "[T]here are no geographical or residential restrictions contained in the express language" of FDUTPA. *Id.* at 1262. FDUTPA "seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation," and this Court is not "precluded from taking corrective measures under FDUTPA even where those persons affected by the conduct reside outside of the state." *Id; See also Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc.*, No. 10-23869-CIV-ALTONAGA/Simonton, 2012 U.S. Dist. LEXIS 61710, *18-19 (S.D. Fla. May 2, 2012); *2P Commercial Agency S.R.O. v. Familant*, Case No. 2:11-cv-652-FtM-29SPC, 2012 U.S. Dist. LEXIS 179628, *10-11 (M.D. Fla. Dec. 19, 2012).

Florida applies the "most significant relationship" test to determine which law should apply to Plaintiffs' and the Class' claims. *See Trumpet Vine Instruments v. Union Capital Partners*, 92 F.3d 1110, 1115-16 (11th Cir. 1996); *See also Cohen*, 259 F.R.D. at 634. The choice of law principles requires the Court to weigh the following factors: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Id.* at 635 (citing (Restatement (Second) of Conflict of Laws §145 (1971).

It is not "arbitrary and unfair" to provide class action relief under Florida law when Florida has "sufficient contacts" with the alleged conduct; "Florida has a great interest in protecting people dealing with corporations doing business within Florida." *Renaissance Cruises, Inc.* v. *Glassman, et. al.*, 738 So. 2d 436, 438 (Fla. 4th DCA 1999) (Applying Florida substantive law in a contested nationwide class action, stating "[e]ach class member's claim implicates Florida's interest in applying its law to adjudicate the dispute which involved a business principally located in Florida," where 92% of the class was non-Florida residents.)

Moreover, "the place of injury is less significant in the case of fraudulent misrepresentations." *Cohen v. Implant Innovations, Inc.* 259 F.R.D. 617, 635 (S.D. Fla. 2008). Additionally, in "[a]n action based on deceptive representations made on a website . . . [the Court] should give greater weight to the Defendant['s] location as opposed to the place of injury." *Costa v. Kerzner Int'l Resorts, Inc.*, No. 11-60663-CV-COHN, 2011 U.S. Dist. LEXIS 66921, at *13 (S.D. Fla. June 23, 2011). "[I]n a false advertising case the state from which the misrepresentation was disseminated often has the predominant interest." *Enzo Forcellati, et al. Hyland's, Inc., et al.*, Case No.: CV 12-1983-GHK (MRWx), at * 3 (C.D. Cal. April 9, 2014) (citing *Wershba v. Apple Computer, Inc.* 91 Cal. App.4th 224, 243 (2001).

Florida has the most significant relationship with this action. First, because this action is based on Defendant's unfair and deceptive business practices, the place of injury, ie: the point of purchase carries little weight when compared to the other factors. Some Class members purchased the Product from Defendant's online store, while others were from retail stores in Florida and other states. Other purchases were from retailers' websites and other online shopping websites.[5] Given the modern age of online shopping, and Defendant's intention to capitalize on same with its online store, a rigid "point of purchase" analysis should not be applied. The internet transcends state lines, and the "point of purchase" is cyberspace. Consumers are able to make a purchase on their mobile device while physically present in one state, and have the order shipped to their home state so it is delivered upon arrival. Online shopping and our evolving mobile society has blurred the traditional "point of purchase" lines such that it should be given little weight and not override the remaining factors that militate in favor of Florida law. This is bolstered by the fact that regardless if the Product was purchased online, or from retail store in Florida or Washington, the Product and its representations are the exact same, rendering the technical point of purchase of minimal consideration.

---

5.     The Product is sold on multiple websites. *See* the Product being sold as a "Beverage" online at Amazon.com by Defendant, available at http://www.amazon.com/s/ref=nb_sb_noss_2?url=search-alias%3Daps&field-keywords=redline%20extreme (last visited April 17, 2014); *See also* the Product being sold at Vitamin Shoppe, available at http://www.vitaminshoppe.com/search/controller?N=0&Ntk=SiteSearch&Ntt=reline%20xtreme&Nty=1&D=reline%20xtreme&Ntx=mode+matchallpartial&Dx=mode+matchall (last visited April 17, 2014).

Every other factor weighs heavily in favor of Florida. Defendant is a Florida corporation with its principal place of business Weston, Florida. All of the Products marketing, advertising, formulation, packaging, labeling, bottling, distribution, and entire command center begins in, and emanates from Florida. All of the conduct that caused Plaintiff's and the Class' injury, including the marketing strategy and business practice that led to the unfair and deceptive advertising and labeling, occurred in and derived from Florida. The fact that Defendant's wrongful conduct spread beyond Florida's borders does not change the analysis. The misrepresentations and misbranding of the Product happened before any purchases occurred. It does not matter where the point of purchase occurred; the unfair and deceptive business practice was all the same.

Moreover, Defendant's revenues and profits derived from the deceptive and misbranded Product are all retained in Florida, and each Class member's claim "involves issues of damages." *Moore*, 12-61703, *7. Although Class members are domiciled through the country they are still entitled to protections under Florida law when dealing with Florida corporations. There is no particular relationship where Class member's and Defendant's relationship centered, which is all the more reason that a nationwide class is appropriate.

Weighing all these factors together, Florida has the most significant relationship to the Class' claims. Although each state may also have an interest in protecting its respective citizens from unfair methods of competition, Florida has the greatest interest in adjudicating this claim. Moreover, the policies behind each state's deceptive and unfair trade practices laws are advanced by providing its citizens protections under FDUTPA. *See Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987) ([The certifying State's] more favorable laws may properly apply to nonresidential plaintiffs when their home states have no identifiable interest in denying such persons full recovery."). Rule 23(b)(3)'s predominance requirement has thus been satisfied.

(2)    Class Treatment is Superior and Manageable

Rule 23(b)(3) considers whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).   "In many respects, the predominance analysis has a tremendous impact on the superiority analysis because when common issues predominate over individual issues, a class action lawsuit becomes more desirable as a vehicle for adjudicating the plaintiffs' claims.  *Nelson*, 270 F.R.D. at 698 (citing *Klay*, 382 F.3d at 1269).   "[T]he improbability that large numbers of class members would possess the initiative to litigate individually" further compels a finding of superiority.  *Fabricant*

*v. Sears Roebuck*, 202 F.R.D. 310, 318 (S.D. Fla. 2001); *Amchem,* 521 U.S. at 617; *Phillips Petroleum Co. v. Shutts*, 472 U.S.797, 809 (1985). For example, Judge Cohn in *Smith* opined,

> the proposed class members' claims are predicated on a common set of facts and concern the same product and advertising. Therefore, a class action will be superior to other available methods for fairly and efficiently adjudicating this controversy.

Smith, 2010 LEXIS 67832 at *15.

Here, a class action will permit a fair and efficient method for adjudicating the common issues of whether the labeling and representations made in the Product's advertising is unfair, deceptive, or misleading to the reasonable consumer. Superiority considerations weigh heavily in favor of class certification because class members would likely have no interest in pursuing individual actions. It would be neither economically feasible, nor judicially efficient, for the many thousands, if not millions, of class members to pursue their claims against Defendant on an individual basis. This makes vindication of class members' rights extremely difficult, if not impossible, absent this case being maintained as a class action. A class action is a superior method for resolving these claims while avoiding duplicative, piecemeal litigation.

The Court should not be distracted by Defendant's anticipated arguments concerning administrative difficulties in proving Class membership. Although identifying the individuals in the putative class may raise some difficulty, "these issues are not insurmountable." *Fitzpatrick*, 263 F.R.D. at 702 (class action involving a retail sales action involving two million packages of a yogurt). "This concern will rarely, if ever, be in itself sufficient to prevent certification. . . . Even potentially severe management issues have been held insufficient to defeat class certification . . . ." *Spinelli*, 265 F.R.D. at 611 (citing *Klay,* 382 F.3d at 1273) (internal citations omitted). Courts commonly certify classes of purchasers of over-the-counter products in retail sales actions, even those where the Defendant has "no way to identify the vast majority of individual class members," by utilizing a Class Action Settlement Administrator. *Smith v. Wm. Wrigley Jr., Co.*, 2010 U.S. Dist. LEXIS 67832, at * 6, 15–17.[6]

---

6.     *See also See e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 431 (11th Cir. 2012) (baby formula); *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1281-82 (11th Cir. 2011) (yogurt); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28 (D.C. Cir. 2000) (vitamins); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 336 (3d Cir. 2010) (pet food); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (diapers); *State of Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1210 (9th Cir. 1984) (dairy products).

Plaintiff proposes the use of an experienced third party class action administrator. Plaintiff and Defendant both have an interest in locating and screening out potential bad claims.[7] In this case, a portion of the Class members' identities and addresses are already known to Defendant from Defendant's own records. Direct notice can be provided to those members. With the assistance and guidance of a professional claims administrator, Plaintiff proposes a nationwide notice program, directed at both major media outlets and at targeted channels such as Defendant's distributors and retailers, and other online outlets.  Any purported "administrative difficulties of establishing members of the class and providing appropriate notice do not negate the overall superiority of the instant class action over the alternative of piecemeal litigation . . . ." *Moore*, 12-61703, *13 (citing *Klay*, 382 F.3d at 1273). There are no "specific management problems—aside from the obvious ones that are intrinsic in large class actions—that would render a class action impracticable in this case." *Id*. Accordingly, Plaintiff has met his burden to show that the requirements of Rule 23(b)(3) have been met.

## V.    CONCLUSION

Based on the foregoing, this Honorable Court should:  (1) appoint Plaintiff, ADAM MIRABELLA as representative for members of the class; (2) appoint the undersigned counsel as Lead Class Counsel; and (3) certify the following class:

> All United States Citizens who have purchased the REDLINE Xtreme® Energy Drink, during the period extending from October 2008, up to the date notice is provided to the class. Excluded from the class are Defendant's officers, directors, employees, and those who purchased the Product for the purpose of resale, and any judicial officer assigned to this matter and his or her immediate family.

---

7.    Plaintiff proposes that this process would screen out: (i) any claim form that stated the Product was purchased from a retailer or distributor from which Defendant knows does not sell the product (by cross-checking them with records showing which retailers and distributors sold the Products, and permitting Defendant to determine if a particular retailer sold Product); (ii) any claim form that cannot properly identify the images features on the Product's packaging; (iii) any claim form that misidentifies whether the Product was in pill, liquid, or other form; (iv) duplicative claims; and (v) known frequent fraudulent filers. Finally, claimants will also be required to affirm their statements under penalty of perjury. Additionally, membership can be confirmed by class members' credit/debit card statements, loyalty cards, and/or receipts that a particular class member may have evidencing purchase of the Product. *See Enzo Forcellati,* CV 12-1983-GHK (MRWx), at * 8, fn. 3 (citing *Wiener v. Dannon*, 255 F.R.D. 658, 670 (C.D. Cal. 2009).